### Lucinda Stailey, Appellee, v. Illinois Midland Coal Company, Appellant.

VERDICTS—*when set aside as against the evidence.* A verdict clearly and manifestly against the weight of the evidence will be set aside on review.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed May 28, 1910.

BROWN, WHEELER, BROWN & HAY, for appellant; MASTIN & SHERLOCK, of counsel.

DRENNAN, BERNARD & LAWLER and C. F. MORTIMER, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by defendant from a judgment for the sum of $5000 rendered against it in favor of the plaintiff, who sued as widow and next of kin of Thomas Stailey, deceased. The action is predicated upon the alleged wilful

violation of the Statute relative to Mines and Miners, whereby the death of the said Thomas Stailey, who was a shot firer employed in the mine of the defendant, resulted.

The first count of the declaration avers the necessity for plaintiff's husband to fire shots placed by miners; the duty of miners to leave pillars of sufficient strength between rooms and the violation of such duty; the wilful failure by the mine manager to instruct said miners to so run rooms as to leave pillars of sufficient size, and to visit working places as often as practicable. The second count avers wilful failure by the mine examiner to discover the dangerous condition of a certain pillar between certain specified rooms and to report as to the same. The third count avers the failure of the mine examiner to visit, inspect, mark, report, record, and to keep Stailey from entering the mine. The fourth count avers a wilful failure by the mine manager to cause certain dangerous conditions then existent to be properly marked, and a wilful failure to display a danger signal where there was a weak pillar of coal.

The evidence discloses that Stailey, a coal miner 33 years of age, was on January 25, 1908, and had been for six months prior thereto, employed at the defendant's mine as a shot firer. About two o'clock in the afternoon of said day, he, in company with one Outcabbage, a companion shot firer, visited and inspected the shots which had been drilled and prepared by the miners in rooms 5 and 6 of a certain entry. Prior to that time, three shots had been prepared in room 6, one of which was placed on the left side of the "face," one near the center, and one about five or six feet back of the "face" on the right or north rib or pillar of said room. The latter shot was driven not directly toward the face of the mine but in a northeasterly direction, toward room No. 5 on the north. At the time of Stailey's inspection, room No. 6 had been driven west about 198 feet from the entrance, and room No. 5 had been driven west about 206 feet. Somewhere from 12 to 25 feet back of the shot in question, a "horseback" had been passed. The last cross-cut in the pillar between the rooms was from 70 to 90 feet east or back

of the shot in question, but there was a cross-cut in the north pillar of rooms 4 and 5, about 58 feet back of said shot. After Stailey and Cutcabbage had finished their inspection of all shots prepared, they started at about five o'clock to fire the same. The method pursued was that known as continuous firing; that is to say, one of them would go ahead and shorten the fuses while the other would fire the shots. Cutcabbage testified that when they reached room 6 he lighted two shots on the left side of the room while Stailey lighted the shot in the pillar between rooms 5 and 6; that then Stailey went toward the face of room 5 and Cutcabbage through the cross-cut to room 4; that there were only two shots in room 5, both in the "face;" that Stailey lighted the one on the right-hand side first, and then went to the one on the left-hand side, and as he was kneeling down to light it, the shot lighted by him in room 6 exploded and blew him over toward the shot he had lighted in room 5, which when it exploded threw him back toward the center of room 5, instantly killing him.

The disputed questions of fact in the case, upon which the evidence is exceedingly conflicting, are as to the width and inclination of the rooms, the width of the pillar between rooms 5 and 6, the position and direction of the shot in the rib, and the distance of the nearest cross-cut, all of which questions are material as tending to show the condition of the shot at the time of its inspection and firing, and the purpose for which said shot was placed, it being the contention of the defendant that the same was placed preparatory to making a cross-cut, which was required by good mining by reason of the fact that a "horseback" had just been passed; that it was not a practicable shot for any other purpose, and that the deceased as an experienced miner should have so known. The plaintiff insists that by reason of the two rooms not being driven parallel but toward each other, an unusually thin rib was left between the two rooms, thus creating a dangerous condition which should have been discovered by the mine manager and mine examiner in the proper performance of their statutory duties. It is obvious if the shot in

question was so placed as to indicate to a practical miner that the same was designed to blow through the rib and make a cross-cut, no dangerous place within the meaning of the Statute existed, and there was no violation of the Statute as charged in the declaration, and hence could be no recovery. If, however, the contention of the plaintiff is warranted by the evidence, the defendant was guilty of a wilful violation of the statute, for it is admitted that the mine examiner did not inspect or mark the place in question, nor make any report or record of its being in an unsafe condition. Nor did the mine manager see that the place was properly marked and that danger signals were displayed as required by the statute.

A careful examination and consideration of the evidence, which we shall not undertake to rehearse or discuss at length, impels us to the conclusion that the evidence was insufficient to warrant the jury in finding a dangerous condition, within the meaning of the statute, at the time Stailey and the other miners went down to work on the morning of the accident. The greater weight of the evidence clearly shows that the shot placed in the thin pillar in question was preparatory to making a cross-cut. As it has been said, a "horseback" in both rooms had just been passed, and after passing that both rooms were widened. The testimony of witnesses experienced and expert in mining was to the effect that it was the usual and better practice to make cross-cuts after passing through a "horseback." Furthermore, the statute requires cross-cuts to be made not less than 60 feet apart, and there is evidence tending to show that the end of the hole where the shot was placed was approximately that distance from the last cross-cut in room 5. Moreover, the mine manager testified, without direct contradiction, that he had ordered a cross-cut made at that particular place. The rough drawings or plats offered in evidence, we think, tend to support this theory. The only evidence introduced by the plaintiff to overcome the circumstances above detailed, and the testimony of the mine manager, is the testimony of Albert Stailey and the mine inspector to the effect that the shot was

a lifting shot; that is, a shot placed for the purpose of lifting the coal out of room 6.

Feeling satisfied that the verdict was clearly against the weight of the evidence, it becomes our duty to reverse the judgment rendered thereon and to remand the cause for a new trial.

*Reversed and remanded.*